if you will, begin. So, I have limited time here. I'm sorry, I'm sorry, stop. Don't count this time against you. There are a lot of different ways that these parties are referred to. If you can remember and if you don't mind, if we could call the two corporations as Trucking and T&G, it would help me out a lot. Absolutely. Okay. I'm sorry, go ahead. Thank you, Your Honor. Since we have a co-appellant, two co-appellants here, the Four Seasons entities, my time is limited. I want to move directly into the major point that Appellant Baisden wants to make. That is, in the trial court's order on summary judgment, there are two contradictory and inconsistent findings with respect to the existence of a lease. In the simple elemental question in this case for determination of coverage under the trucking policies is whether or not a lease existed. Whether or not a valid and enforceable lease exists, I understood the parties not to disagree that it had to be in writing in order to be valid given the circumstances of this case. Am I wrong? I believe that, Your Honor, that Judge Jones stated, reiterated in his motion for reconsideration that a writing was not required in order for the appellants to successfully argue coverage. But you understand we're at De Novo Review here. We're not grading his paper. He was quoting himself in his summary judgment order. Yeah, but I thought that state law required a lease if it extended beyond a year to be in writing. Am I wrong? I think that is incorrect. I think the statute of frauds in this case under Georgia law does not apply. First of all, the statute of frauds is a personal defense. Grange was not a signatory to any lease contract and therefore not in a position to raise that defense. Secondly, even if the statute of frauds did apply, the partial performance exception applies in this case and excuses the requirement of a written lease. We discussed this extensively in our briefing. But my question is, unless there are exceptions, a lease that extends beyond a year must be in writing. Yes, sir. I would agree with that. Okay. So, in looking at the evidence in this case, it's appellant based in its position that there is a substantial amount of evidence that does in fact indicate that there was a valid enforceable legal lease contract. First, I would point to the payment of the insurance premium, which was nearly $5,000 or 10% of the total amount of the insurance premium for all of T&G's vehicles as consideration for the lease contract. Secondly, and equally as important, there was testimony in the form of an affidavit of Natalie Atkinson that was submitted with Exhibit B, and I think it was on paragraph 10, where she stated that trucking had to seek T&G's permission to use the dump truck at issue on the day in question, on the day of the accident, thereby showing the exclusive use and control of the vehicle that T&G enjoyed. And I should point out, as the court knows, that there is no dispute that FST, excuse me, that T&G leased this particular dump truck and it was on its policy. Well, there is a dispute of whether they leased it, is there not? I think the testimony was all consistent as far as what Natalie Atkinson said, as far as moving this vehicle over to, from the trucking policy to... At the very least, there's a genuine issue of material facts. Exactly. At the very least, there's a genuine issue on that point. Doesn't it turn, and I apologize, but doesn't it turn on whether there's a genuine issue of material fact that there was a lease? Absolutely, I would agree with that. That's the whole case, really? I would agree with that. Why don't we get right to the evidence about that, since the whole case turns on it? Well, I'm trying to do so in terms of why we contend there's an enforceable, legal, valid lease in this case, and what evidence indicates that. And in fact, I think all of the evidence of record indicates that. I know of no evidence of record that indicates that there was not a leased vehicle. Other than the absence of evidence is evidence. I would agree with that. So I think in terms of looking at other terms of the lease, like the duration, Atkinson testified at her deposition that T&G had not leased vehicles for a few years prior, thereby indicating that this would have been a multi-year lease because there was, I believe, the first policy was issued in March of 14. Her deposition was in August of 16, so that's over two years, if we want to talk about the length of the deposition. I think it's important to point out there were two distinct companies here, trucking and trucking and grading, although they were related because they were run by the same folks. But it was a small, privately owned company. Grange is a large, billion-dollar corporation. I bring this up because the behavior of the parties in this case all indicated that there was a leased vehicle, that the truck was leased in this situation. Grange had the opportunity, having written the policies, and by the way, I should mention that both policies are the same policy forms, issue to trucking and issue to trucking and grading. That's excluding the umbrella policy. Grange could have simply said, if they wish, that there's no coverage for leased vehicles that you own. That language is not anywhere to be found in this policy, either policy, in this policy form document. I wanted to just read quickly a statement that Judge Gems made that I think is important from his order. And it says, when one company leases a vehicle to another, the lessor cannot simply take the vehicle back whenever it wants. The contract would specifically provide the circumstances under which the lessor can take the vehicle back because lease agreements generally provide the lessee with the exclusive right to use the vehicle. He goes on to say that in that sense, the vehicle belongs to the lessee. I think in this case, Your Honor, I absolutely agree. There's a genuine issue of material facts as to whether an enforceable lease agreement exists. If so, coverage is triggered. I don't think that's disputed. Under the trucking policies, that's the primary liability policy and the umbrella policy as well. We think this is not a case that's appropriate for summary adjudication. And we would ask that the decision to grant summary judgment be reversed and remanded for further proceedings. Thank you. Mr. Currivilla for T&G. May it please the Court. Your Honor, in preparing for oral argument, I had used trucking as the abbreviation for four seasons trucking and grading as the abbreviation for four seasons trucking and grading. I will try to use the abbreviations that the Court has designated, but just so the Court is aware, in case I slip up and revert back to grading instead of T&G, that's why. As the Court is aware, four seasons trucking believes that the trial court committed reversible error when it granted Grange's motion for summary judgment on the issue of coverage under the trucking and umbrella insurance policies that the trial court abused. Just so I understand, grading or T&G hadn't done anything for a couple of years, had it? Had it done any trucking or any grading for a couple of years? I thought the evidence was no. It didn't, hadn't been active, let's put it. My understanding is that the grading company was not active, Your Honor, but... I'm sorry, was what? That the grading company was not active. Yeah. For a couple of years, but what I would like to emphasize is that with respect to coverage under the trucking and the grading policies, what trucking and grading did very early on in this appeal, we filed a motion to adopt the portions of Demetra Basin's brief that addressed coverage under the trucking and umbrella policies. Is there any difference in ownership? With respect to the truck that was involved in the incident? No. Trucking and trucking and grading, are they... Oh, they're owned by the same person. It's a family-owned company. So why, is it subchapter S? I don't remember. I believe it is a subchapter S, but I am not sure. Then why have the lease? Why not just say, y'all use truck now, I'll let you know if I need it. I mean, it's not even y'all, it's the same people. What's the purpose of the lease? Your Honor, from what I recall, I think that title to the truck was in trucking's name, but that the grading company, when it was started up, they needed trucks. And so for that reason, the grading company signed a lease with the trucking company so that it could use that truck. And I believe that that specific truck was identified as an insured vehicle under the grading policy. So grading needed to have the exclusive right to go ahead and use that truck, I believe, to be identified as a covered vehicle under the grading policy, under the TNG policy. I sense lurking in the background is some kind of tax consideration, because otherwise it doesn't make sense to have two identically owned small corporations or small businesses, one leasing to the other. That matters for tax, and as it turns out, it matters for insurance, but not for reality. There may have been a tax consideration, and I also think it was an insurance consideration as well, because that truck that was involved in the incident, it was identified specifically as a covered vehicle under the TNG policy. Right. And so that's why I think, another reason why I think that the truck was leased by TNG from trucking, because it's identified as an insured vehicle. But if I could pivot real quick to the issue of whether it was two accidents or one, I believe this is an issue that I'm mainly concerned with that wasn't briefed by Demetre Bayston. It doesn't affect Demetre Bayston's claim at all, but it does affect trucking and grading. You're arguing basically, or you could win on loss of control as a defining factor. In other words, if he regained control between the first hit and the second, that might cause you a problem. But your situation, as I understand it, is that the causation vehicle, the driver never gained control. That's not correct, Your Honor. Our position is that the definition of accident is governed by the terms of the insurance contract and the grading policy. Grading, as a multi-billion dollar insurance company, had the ability and the right to define accident any way it wanted in the insurance contract and to define accident as exposure to the same conditions. Now, there is a— I know, but I thought there were some decisions which I thought were persuasive, but you can talk me out of it, saying the condition is the same so long as the driver of the causation vehicle doesn't regain control, which in this instance, I thought there was no genuine issue of material fact as to whether he regained control. But if you want to tell me I'm wrong in thinking that you went on that basis, have at it. Your Honor, I'm out of time. You've got two extra minutes because I've been talking on your time. I appreciate that, Your Honor. There is a Georgia Supreme Court case. It's State Auto Property and Casualty Company v. Maddy. That case does adopt a specific definition of accident, but what the Supreme Court, and I believe it's Justice Nemias, made very clear in that case, is that definition of accident adopted by the Supreme Court in that case is only a default rule. So that definition only applies in the absence of the insurance contract not defining what an accident is. And I think the Supreme Court in that Supreme Court case made that distinction about three different times, saying, look, you know, in the absence of a clear definition of accident, this definition applies. So in this case, whatever definition the Supreme Court adopted for accident in that case, it doesn't apply because the TNG policy defines accidents. Specifically, the definition of accidents says that accident includes continuous or repeated exposure to the same conditions resulting in bodily injury or property damage. And I note that the definition used says conditions in the plural. So what that means, Your Honor, is that if there is more than one condition that a third-party driver was exposed to in an accident, that condition, all of the conditions must be the same. So in this case, and also that definition of accident says that whatever conditions that other drivers have been exposed to by the insurance negligence, those exposure to those same conditions must result in bodily injury. But the provision you just read doesn't really define accident. It says what accident includes. And so how is it that we, if the policy, how does the policy conflict with State Farm? Because that's your argument, is that we should be going under the policy and that this is more than one accident and we should not follow State Farm, correct? Oh, correct. And I see I'm out of time again. If I could just respond to that one question. Your Honor, you stated that my position is that the definition set forth is contrary to the definition of State Farm. Or that you have a definition of accident in the policy, so we should follow that and not look to State Farm. Correct, correct. That's my argument. My argument is not necessarily that the definition of accident is contrary to State Farm. I don't think we should compare and contrast the two. I think my position is that there is a definition, and because there is a definition in the policy, State Farm is not relevant. The definition in State Farm is not relevant. But it's not really, and this is my point, it's not really a definition in the policy. It says accident includes. It's vague. I think, well, it's... And so why does State Farm not step in there? Well, State Farm doesn't, I think it is a definition. I think accident can certainly include other things, but at the very least, it includes exposure to the same conditions. And I think when the definition of accident includes that component, and the conditions that Terry Slaughter and Demetra Basin were exposed to were not the same conditions, I think that takes it out of State Farm. Why not? Why not what, Your Honor? Why not were they the same conditions? I'm sorry? Got a runaway vehicle. Correct, correct. Because... Two folks and a few seconds apart. They were not the same conditions because there were different collisions. There was the first... And because there were different collisions, the force is different. The angle of impact is different. The force of impact is different. The injuries were drastically different. And I think all of that has to do with the fact that Terry Slaughter and Demetra Basin were exposed to very different conditions. But under your theory, anytime there are multiple vehicles involved in an accident, it's more than one accident. Always. Under, no. No, not under my theory. Well, give us an example of where the force would be the same even though there are multiple vehicles involved in an accident. Under, okay, under this definition of accident, if there's separate collisions, there would always... If there were separate collisions, there would always be separate accidents. If there are more than one vehicle involved, there will always be separate accidents under your approach. Under this definition, not always. For example, if there wasn't this definition and if it was possible... No, no. There is this definition. Give us an example under your interpretation of this definition where there wouldn't be multiple collisions for purposes of the policy. If one of our dump trucks was parked in a parking lot and gas leaked from the gas tank and ignited, if there was like a cigarette butt on the pavement and gas ignited, leaked fuel from the gas tank and it turned into a fire and that destroyed six cars. In that instance, you'd have multiple vehicles involved... You'd have multiple vehicles involved in an accident, but you wouldn't have multiple collisions. But any time you have an insured vehicle that during one accident loses control, hits multiple cars, these are going to be multiple accidents by your theory. Under my theory. Correct. Correct. What if it hits a pedestrian five feet later, doesn't slow down anything, five feet later, hits another pedestrian? That's multiple accidents. Pedestrian hits... A vehicle hits one pedestrian and then hits another pedestrian. Two feet apart. Two feet apart. That's a rhetorical question. Let's leave it at that. And actually, I inadvertently misled you. State Farm, State Aldo, definition is adopted. You lose. Do you not? Correct. Correct. I'm sorry. Sometimes I'm thinking the insurance company is the one that's up here first because they often are. But I apologize for any confusion about that. All right. Let's hear now from Mr. Heitstan. And Mr. Heitstan, I'm going to give you three extra minutes if you need it because I gave them a lot of extra time. Good morning, Your Honor. May it please the court. I'm Trevor Heistan. I'm representing Green Central Casualty Company. Your Honor, Judge Carnes, you have posed the position that it is dispositive on this appeal whether or not a lease existed. While I will agree with Your Honor that the existence or the non-existence of lease is an issue, that's not the dispositive issue. In my mind, Your Honor, the issue is to be resolved as whether trucking had to have permission from grading for trucking's own driver to use trucking's own truck on a trucking job. You wouldn't include in permission lease right under a lease? The lease of which has never been produced, in which there is no evidence of any consideration for the lease. We have no evidence of the terms of the lease. And it is questionable whether it even existed. You know, that is not the dispositive issue. As illustrated by the judge in the United States District Court, that is Judge Jones, in order for it to fit within the policy definition and the Grange policy as a covered vehicle, the issue is not whether or not it's leased. The issue is whether or not it is borrowed. And for it to have been borrowed, there had to be the exclusive use rights conferred upon, in this case, supposedly, grading in order for trucking to have borrowed its own truck back when this incident occurred. The record in the court below lacks any evidence of any lease which confers exclusive use rights to grading. What do I mean by that? The evidence that the court below had evaluated is the mere conclusory assertion in the form of an affidavit from Ms. Atkinson. And let me be clear, Your Honors, Ms. Atkinson is the president not only of trucking, but of grading as well. So we are literally looking at a situation where based on the theory of the appellants, that Ms. Atkins would say, I'm going to decide on this date that I'm going to give permission to myself, essentially, to use this truck. Which the evidence actually demonstrates was not only equally available to both of these entities, but as Your Honor noted, grading hadn't even done any work for at least the year before this, didn't even have any employees. There is no evidence, and to this day there is no evidence of the actual terms of the supposedly... Yes, Your Honor. If I understand your argument right, and I understand and I think I'm in agreement with there, had to be, give exclusive rights to T&G. That's accurate. And you're, given the procedural posture of the case, your position is there's no genuine issue of material fact that T&G had exclusive rights. That is accurate. And unless they had put in some evidence of the content of the lease and that evidence included exclusive rights, but would you have a lease where you got less? Does lease connote exclusive rights by itself? It does not, Your Honor. Not only does it not, in other words, the parties had not briefed, and I am not aware of authority that says, by definition, if it is a lease, it confers exclusive use rights. And I could think of several analogies that would fit into a situation where there is a lease that occurs, but the property is equally accessible to both sides. And if that's the case, there's no borrowing that occurs. And let's be clear, borrowing is not a defined term within the policy. So Judge Jones, below, quite accurately used, what is the common definition or meaning of the term in this contract case? And in doing so, Judge Jones looked at, what do we got from Ms. Atkinson? Well, she makes the mere assertion that there was a lease. There hasn't been discussion of the Rule 59 motion for reconsideration. I will note, and the court is aware, that subsequent to the entry of summary judgment in this case, Ms. Atkinson comes up with a multi-page affidavit, which conveniently seems to flesh out some of the issues that Judge Jones had with the proof that had been presented in the court below. Rule 59 would say that you can't introduce new evidence that would have been available before the entry of summary judgment. I don't think that that's a major point of contention here today. What was the court below faced with when it was evaluating the exclusive use? What we have is the assertion that there was a lease. Nothing about the terms. Nothing about the consideration. This argument that's been presented by the appellants, that somehow because premiums were paid on the grading policy, that that constitutes consideration supporting the existence of lease, thereby in turn getting around the statute of limits, or excuse me, the statute of frauds issue, which is a very real issue in this case. The consideration for, I'm going to insure a truck that might be used in grading, or at least may have been used sometime way before this act in 2015, that's not consideration. When was it listed on the policy that it was listed? I suspect, Your Honor, and again, this is my suspicion, and I think it's a reasonable inference that can be drawn from the evidence, is that at some time prior to this accident in 2015, that grading, for tax purposes perhaps, I am not a tax attorney, Your Honor, I don't know this, and I can really only rely on the record, but the testimony is that Atkinson, and let's be clear, it's the same president for both companies, that they were thinking of getting into the grading business in the future. So you know what? This is one of the trucks that may be used in the grading, so we better make sure that we have this listed on the policy, and it was listed on the grading policy, and to be clear, Your Honor, those policy limits have been paid on the grading policy. But it wasn't listed on the other one. I guess my question should have been, why not list it on the other one? I don't have the answer for that, Your Honor, and the existence of the fact that the truck involved was not listed as a vehicle on the trucking policy is obviously one of the reasons why no coverage was found under the trucking policies. But merely because a vehicle is listed on the grading policy is not, number one, consideration, which gets around the statute of frauds issue, that subheading five within the Title 30, and number two, doesn't demonstrate the existence of exclusive rights that are conferred upon grading as a result of this lease. Clearly, there is the affidavit, and I suspect in the rebuttal we're going to hear about this. There is, and I'm going to tell you right out, it's paragraph 10 of that first affidavit in which President Atkinson says that trucking had permission to use the vehicle. Again, this is analogous, Your Honor, I believe, that if Judge Karn said, Trevor, may I borrow your truck or use your truck? And I say, sure, I'll come and get it tomorrow from you. And I go, you're not there. I take the keys. Did I have permission to take your keys? Yes. Was it specifically conferred? No, but that's my truck. And that's why I took it. And that's exactly the circumstance we have here. As opposed to, Your Honor, I'm going to lease my truck to you. The term is going to be a year. You will pay me $100 a month for the use of the truck. And during that period, I, as the owner of the truck, may not go and grab the keys off of your table because there are exclusive use rights. For me to then, in that second circumstance, say, I would like to use the truck,  and that would be the borrowing. The circumstance we have in this case, Your Honor, there is absolutely no evidence, number one, of the lease. But, again, that's not, as I said in my opening. Well, there is evidence of the lease. She testified there was a lease. There's no end. It seems like there was a lease. That's enough in summary judgment for a genuine issue material fact that there was a lease. I agreed, Your Honor, but that's why in my opening, I said that is not the essential issue. The essential issue is the existence of a lease that conferred exclusive use rights. There had been in Judge Jones' discussion that he noted that there is no evidence of that. I suspect, and in the brief, we heard from the appellant that at some point he's saying, well, I'm assuming there's a lease or I'm taking for granted that there is a lease. But then, and let's be clear what the court below said is that the evidence in the record indicates that no legal lease agreement between trucking and T&G existed in 2015, number one, and number two, he spent a lot of time on the exclusive use. That's what's required. If we're looking at a policy that's issued by Grange and the policy issued by Grange defines a covered vehicle, again, under the trucking policies, which is why we're here, as borrowed. And you've got a circumstance where trucking, when the accident occurred, is using its own truck. That's not disputed. It's trucking's own driver. It's not disputed. It's a trucking job. That's not disputed. And Grading hadn't even done any work and hadn't even had any employees in 2015. You've got to dig a little bit deeper, respectfully. How is it that this truck was borrowed from some other company? What's the evidence that it was borrowed? And it is not there. The court's order, very correctly, established that. There was no issue of material fact as to that factor, and that's why the granting of summary judgment on that issue is appropriate. You want to get to the multiple accidents versus single accident issue? Yes, sir. And this issue with the state auto, the Maddie case, and the comparison with the policy language that's in place here is very direct. And your honor has illustrated the... He's saying, of course, the definition and the policy supersedes that. The definition and the policy is absolutely consistent with state auto. And let's be clear, what the policy says is that an accident is defined as repeated or continuous exposure to the same condition. In this case, the condition was the negligence of the driver of the trucking truck. Spell and dictate carefully in that one. That is the condition. That was the negligence of the driver crossing the center line. The policy also says whether or not it involves multiple vehicles. And in this case, it involved multiple vehicles. Your honor has absolutely established that there will never be a circumstance. And the court in state auto versus Maddie said the same thing. There will never be a circumstance where when you have multiple collisions, which occur one after the other within a second of each other, just like in Maddie, involve multiple bicycles. It will always necessarily involve a slightly different time period. Yes, I will concede that when these two collisions occurred, the angle of attack is between these two vehicles is slightly different. But that's not the issue. The issue is, is it a continuous or repeated exposure to the same conditions? That's within the definition of the policy. And the Grange policy also provides that the liability coverage limits apply no matter how many vehicles are involved in the accident. The policy language is consistent with state auto versus Maddie. And state auto versus Maddie said that is one accident. That is as defined by the policy. So to say that the Grange policy language supersedes state auto is not the characterization that my client asserts. The characterization is they are consistent with each other in order to conform to Georgia law. And Georgia law is what applies in this case. Finally, unless there are questions about the issues that are important to this bench, I want to emphasize that the Rule 59 issue about not evaluating evidence which had been submitted in a Rule 59 attempt to not modify, to not revisit evidence which had presented what absolutely happened is they're introducing new evidence. What happened in this case is that Judge Jones entered summary judgment, pointed out the deficiencies in the appellant's case quite correctly and according to law. And then what happened is is that the appellant through Ms. Atkins said, let me try to clean this up. Despite the fact that there's no lease because it was evidently destroyed by a tree in a weather event, despite the fact that there's no evidence from what I'll call the hard drive on a server, despite the fact that neither grading nor trucking could ever find any payments from grading to trucking to support consideration for this supposed lease that occurred, all of the sudden we have a refreshing of the recollection, I guess, in which all of a sudden all of these supposed terms of a lease popped up in this affidavit. That's exactly what Rule 59, the case law interpreting Rule 59, avoids. You know what? That might have been good information, although I will note Judge Jones specifically and correctly noted that it pointed out the inconsistencies in Ms. Atkins' prior testimony, but a Rule 59 motion is not a vehicle to introduce new evidence. And this Court of Appeals has emphasized in its decisions, which have already been cited in the brief, that Rule 59 motion cannot be used to relitigate old matters, raise argument, or present evidence that could have been raised prior to the entry of judgment. That's the Arthur versus King case, which has been cited. And that's an 11th Circuit, 2007 case. So, that takes us back to where we began. What did the Court have before the entry of summary judgment? Okay, there may have been some evidence of the existence of a lease, but that's not enough. What is enough and what was needed and what was not presented is evidence to support the inference that there was the exclusive use provided to grading by trucking that somehow lived on beyond the life of that grading entity and controlled what happened in October of 2015 when this accident occurred. It wasn't there.  the lower court's granting of summary judgment and the enter ordering that reasoned analysis. Thank you, Mr. Houston. Mr. Mills, two minutes. Thank you, Your Honor. I want to emphasize that the issue of exclusivity or whether the truck was borrowed is a genuine issue of material fact to be determined here. There is evidence from Ms. Atkinson that she sought T&G's permission for trucking to use the truck on the day of the accident when trucking was performing some work for, I believe, contractor C.W. Matthews with which she testified trucking had no, excuse me, T&G had no involvement. The other thing I would say is that if a truck, if the truck was not leased, there's no reason for her to have sought permission for trucking to have sought permission to use the truck. Um, the truck is not listed on Did she ask herself for permission? Well, we're talking about two distinct legal entities and this is how the truck was treated as far as I know, but how does one get permission from oneself? I guess her husband worked as, I think, the supervisor. So I don't know what the division of duties between the two of them were. She was the president of both companies. I would concede that. Well, who asked whom for permission? That's, Your Honor, I don't know the answer to that. I know, I do know that Jeanette So we don't really know if permission was requested. Granted. She, Atkinson testified that she sought permission on behalf of trucking to use the truck from TNG. Is what her testimony is. She's the head honcho in both of them. Right. She sought permission from herself. There were others. I don't know the answer to that. There were others who were involved in terms of listing. Don't you have the burden of showing that she actually did request permission from somebody who was in a position to give it and that they gave it? That is the testimony. I don't know who handled the contract for C.W. Matthews that day on behalf of trucking doing the work for C.W. Matthews. She wouldn't have to ask anybody else. She's, she's the boss. I will say there are numerous employees that trucking had not TNG. So it could have been any number of trucking employees that were handling that work for C.W. Matthews and wanted to use that truck that was listed on the separate company TNG's policy. I thought you said she said she asked permission. I said she asked on behalf of truck. She sought permission to use on behalf of trucking the TNG listed truck. The multiple employees are not. She was the one who requested permission. I don't know that it's clear from that paragraph in her affidavit exactly who asked who that question concerning permission. But there is a I misunderstood you Dan and that was the basis of my questions which I thought you said she testified that she asked permission. She testified that she sought permission for trucking to use that truck. Asked same thing. But she didn't say how who she thought it from. No, sir. Not in that paragraph. OK. I wanted to also be clear that this lease was in writing. There is evidence consistently throughout the record that. OK. I'll let you run over. But your time's up. Let's hear one minute from Mr. Kerrville. Thank you, Judge Karnes. To follow up on the court's previous question before I respond briefly to my friend on the other side. The court recently inquired on whether accident was actually defined in the policy. If you look at document 49-2 which is page 26 of that document. Accident is the first definition identified as under the definition section. So it's clearly identified as a definition in the insurance contract. And now it's certainly vague because as the court pointed out accident is defined as including the same conditions. And so certainly accident could mean something else. But what accident definitely means at the very least is exposure to the same conditions. And in this case I believe the evidence is clear that slaughter and basement were not exposed to the same conditions. And I guess my point was that and I was calling it State Farm but the state auto case is not inconsistent with the policy language here which was the point Grange's counsel made as well. Well I would not agree with that your honor because the state auto case considers different collisions to be part of the same accident. And the way accident is defined what was included as a definition of accident in the policy is exposure to the same conditions. So if there's different collisions that can be construed as exposure to different conditions. Whereas in the state auto case they specifically consider a set of facts under the insurance policy where there were different collisions and they concluded the court concluded that even though there were different collisions they were part of the same accident. So that's how the definition in this policy is different from the definition adopted in state auto. Also your honor going back to the court Mr. Caramello no also you're over. We'll take the case under submission. Thank you. Thank you judge.